# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-80407-SINGHAL

OFFICE DEPOT, INC.,

    Plaintiff,

vs.

MEGAN BABB,

    Defendant.

_____/

## **PRELIMINARY INJUNCTION**

**THIS CAUSE** is before the Court on Office Depot, Inc.'s ("Office Depot") "Motion for Expedited Discovery" ("Discovery Motion") (DE [8]) and "Motion for a Temporary Injunction" ("Injunction Motion") (DE [9]). Based on the two motions, the verified complaint (DE [1]), Defendant Megan Babb's ("Babb") responses in opposition to the two motions (DE [12], [14]), and Babb's sworn declaration (DE [16]) filed simultaneously with her responses in opposition, the Court **GRANTS** the Injunction Motion, **DENIES** the Discovery Motion, and finds the following.

Office Depot alleges breach of contract, misappropriation of confidential and proprietary information, breach of fiduciary duty and the duty of loyalty, and seeks injunctive relief and a declaratory judgment against Babb, a former upper-level management employee. Around 2014, Office Depot promoted Babb to a major accounts manager ("MAM") position. *See* Verified Compl. ¶¶ 23–24. As MAM, Babb's job responsibilities included growing sales through existing accounts and new account

acquisitions; establishing relationships with key company representatives; participating in the negotiation of pricing and terms with new and existing customers; and maintaining current knowledge of Office Depot's company business marketing, sales, and pricing programs. *Id.* ¶ 25. Office Depot entrusted Babb with confidential, proprietary, and trade-secret information. *Id.* ¶ 27. This included, among other things, sales information, sales and marketing strategy information, and the identity and lists of actual and potential customers. *Id.*

With this sensitive information, and considering her status as higher-level management, Office Depot required Babb to agree to and sign a restrictive covenant not to compete. *Id.* ¶ 33. The covenant stated, in relevant part:

> Associate acknowledges that in the course of employment with Office Depot, Associate has and will have access to and gain knowledge of the Confidential Information of Office Depot; Associate has or will have substantial relationships with Office Depot's existing and prospective customers; and/or Associate has or will perform services of special, unique, and extraordinary value to Office Depot. Therefore, during the Non-compete Period, Associate shall not anywhere in the Restricted Area: . . . work for, become employed by, or provide services to (whether as an employee, consultant, independent contractor, volunteer, officer, director, or board member) any Competitor where such position or service is competitive with or otherwise similar to any of Associate's positions or services for Office Depot.

*See* Ex. B. to Notice of Removal (DE [1-1]). The covenant provided the following definitions:

> "<u>Competitor</u>" means . . . stores, retailers, direct business to business sales providers, or contract/commercial stationers engaged in the sale of business or office products and/or services, examples of which include but are not limited to Staples, **W.B. Mason**, Impact Office Supplies, and Royal Office Products . . . .
>
> "<u>Non-compete Period</u>" means the period of Associate's employment with Office Depot and the greater of six months after Associate's employment ends with Office Depot(regardless of how it ends) or the period

2

of time following the end of Associate's employment during which Office Depot pays severance to Associate (or if severance is paid in a lump sum, the period of time corresponding to the amount of salary paid in a lump sum).

"Restricted Area" means that area necessary to protect Office Depot's legitimate business needs. Associate acknowledges that Office Depot does business in all 50 states, Puerto Rico, St. Croix, and other U.S. territories and has direct competitors in all of these areas. Associate further acknowledges that Office Depot's Confidential Information needs to be protected in all 50 states, Puerto Rico, St. Croix, and other U.S. territories. Accordingly, for those Associates whose job responsibilities and access to Confidential Information are not limited to a specific geographic area, the Restricted Area shall include all 50 states, Puerto Rico, St. Croix, and other U.S. territories. For all other Associates, the Restricted Area shall be within 150 miles of Associate's primary work location(s) for Office Depot within the two years prior to the end of employment with Office Depot.

*Id.* (emphasis added).

In January 2020, Office Depot began to transition what it alleges is its "largest account in Maine" to Babb—an account worth roughly $3.5 million in annual revenues. Inj. Mot. 7–8. On January 23, 2020, Babb resigned from her position at Office Depot and joined the employ of a rival business, W.B. Mason. *Id.* According to the verified complaint and the Injunction Motion, upon Babb's returning her computer issued by Office Depot, Office Depot learned she had connected multiple external storage devices to this computer and accessed them. *Id.* at 8–9.

On March 9, 2020, Office Depot filed this action in state court, which Defendant removed to this Court under diversity jurisdiction that same day. With its complaint, Office Depot filed the two instant motions.

According to the Injunction Motion, Office Depot seeks the following relief:

First, Office Depot requests that the Court temporarily enjoin Babb from (a) working for (or being employed in any capacity by) W.B. Mason, or any other competitor of Office Depot, in violation of the restrictive covenants, (b) possessing, utilizing and/or disclosing any of Office Depot's

3

trade secrets and/or confidential or proprietary information, or any other Office Depot business information; (c) directly or indirectly soliciting any customers of Office Depot in violation of the restrictive covenants; or (d) directly or indirectly soliciting any employees of Office Depot in violation of the restrictive covenants;

Second, Office Depot further requests that the Court order Babb to immediately return any Office Depot confidential, proprietary or trade secret information in her possession, custody, or control, including, but not limited to, the external USB/flash drives that Babb connected at any time to her Office Depot computer, in doing so not activating any such devices to prevent the destruction or modification of relevant metadata, and identify to whom and with whom she shared any and all such information; and

Third, in conjunction with the ordering of a temporary injunction, Office Depot requests an expedited discovery schedule, as is more fully set forth in Office Depot's Motion for Expedited Discovery filed contemporaneously herewith, so that the Court can resolve this matter without unnecessary delay. Babb's violations are ongoing, and, with each passing day, she inflicts additional irreparable harm on Office Depot's legitimate business interests.

Inj. Mot. 3 (DE [9]).

Before the following legal analysis, the Court notes Office Depot purports to request a "temporary" injunction. The Federal Rules of Civil Procedure provide no such remedy; rather, the rules provide for either a "preliminary injunction" or a "temporary restraining order." *See* Fed. R. Civ. P. 65. The Court will treat Office Depot's motion as seeking a preliminary injunction under Rule 65(a). Indeed, this cannot be a motion for a temporary restraining order because such motions and relief are proper only *without notice* to the opposing party. *Del Valle Import & Export, LLC v. Alnost USA, LLC*, 2018 WL 6261515, at *1 (S.D. Fla. Jan. 8, 2018).

## II. DISCUSSION

### A. Legal Standard for a Preliminary Injunction

A preliminary injunction is appropriate if the movant demonstrates all of these elements: (1) a substantial likelihood of success on the merits; (2)

4

that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest.

*Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014). "The grant or denial of a preliminary injunction rests within the sound discretion of the district court." *Transcon. Gas Pipe Line Co. v. 6.04 Acres, More or Less*, 910 F.3d 1130, 1163 (11th Cir. 2018). "A preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly establishe[s] the burden of persuasion as to each of the four prerequisites." *Devs. Sur. & Indem. Co. v. Bi-Tech Constr., Inc.*, 964 F. Supp. 2d 1304, 1308 (S.D. Fla. 2013) (internal quotation omitted) (alteration in original). In deciding on a motion for a preliminary injunction, the "court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

    **B.**    **Legal Analysis**

        **1.**    **Substantial Likelihood of Success on the Merits**

Office Depot has established a substantial likelihood of success on the merits of its claims. Under Florida law, "[e]vidence that an enforceable covenant not to compete was breached will support a trial court's finding of the likelihood of success on the merits." *Atomic Tattoos, LLC v. Morgan*, 45 So. 3d 63, 67 (Fla. 2d DCA 2010). Section 542.335, Florida Statutes, establishes certain requirements for a covenant not to compete to be "enforceable." The statute requires that the restrictive covenant be in writing and signed by the person against whom enforcement is sought; be reasonable in time, area, and line

of business (i.e., scope); and be reasonably necessary to protect one or more legitimate business interests. See Fla. Stat. § 542.335(1)(a)–(c).

Here, there is no dispute that the covenant is in writing and signed. Office Depot also satisfies the requirement that the covenant be reasonably necessary to protect a legitimate business interest. This factor dovetails with the preliminary injunction element that such relief is necessary to prevent irreparable harm, discussed in further detail below. Finally, the Court finds Office Depot has satisfied the requirement of reasonableness in time, area, and line of business.

Section 542.335(1)(d)1., Florida Statutes, provides, in relevant part:

> In determining the reasonableness in time of a postterm restrictive covenant not predicated upon the protection of trade secrets . . . [i]n the case of a restrictive covenant sought to be enforced against a former employee, . . . a court shall presume reasonable in time any restraint 6 months or less in duration and shall presume unreasonable in time any restraint more than 2 years in duration.

The determination of whether a covenant not to compete is reasonable in terms of area is case-specific and fact-heavy. See, e.g., Carnahan v. Alexander Proudfoot Co., 581 So. 2d 184, 186 (Fla. 4th DCA 1991) (upholding injunction with nationwide geographic scope, and noting that evidence of the employer's "geographic market" outside of the country may be grounds to extend the geographic scope of the injunction). Office Depot, a well-known national brand, indeed has a nationally-recognized, nationwide market. As Office Depot correctly points out in the Injunction Motion, however: It simply seeks to enjoin Babb from working for a competitor in the same geographic territory for which she worked on behalf of Office Depot. Such a restriction is reasonable to protect Office Depot's legitimate business interests in the development of its customer

relationships and goodwill, which Office Depot created through substantial investment. The Court agrees.

### 2. Necessary to Prevent Irreparable Harm

"The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j). "[T]o benefit from the presumption of irreparable injury, the party seeking to enforce a covenant not to compete must show that the covenant protects a legitimate business interest as defined by section 542.335(1)(b) and that the covenant was violated." *Walsh v. Paw Trucking*, 942 So. 2d 446, 448 (Fla. 2d DCA 2006). Section 542.335(1)(b) defines "legitimate business interest" as including up to five various business-related interests. Office Depot relies on two specifically: (1) "Customer, patient, or client goodwill associated with: An ongoing business or professional practice, by way of trade name, trademark, service mark, or 'trade dress'; [or] (2) A specific geographic location." *Id.* § 542.335(1)(b)4.a.–.b.; *see also Hasley v. Harrell*, 971 So. 2d 149, 151 (Fla. 2d DCA 2007) (affirming injunction in an action for breach of covenant not to compete against former employee who became intimate with all aspects of the business and had access to financial information and continuous client contact); *New Horizons Computer Learning Ctrs. v. Silicon Valley Training Partners*, 2003 WL 23654790, *6 (M.D. Fla. Nov. 12, 2003) (emphasizing that an injunction entered against a competing employee is proper where the employee's knowledge of how to run the competing business stemmed from his former employer's "valuable, confidential business and professional information").

Babb responds that "[c]ritically, Office Depot has not been able to point to a *single* customer, or even sale, that it lost or might lose as a result of Ms. Babb's working for" the

7

competitor. Resp. in Opp'n to Mot. for Temp. Inj. 15 (DE [14]) (emphasis in original). The above-cited cases, however, do not support the notion that a moving party *must* make such a showing. While it may be sufficient for a preliminary injunction, it is not necessary.

### 3. Balancing the "Harm" to Office Depot and Babb

The third consideration for the Court is whether the threatened injury to Office Depot "outweighs the harm the preliminary injunction would cause" Babb. *See Chavez*, 742 F.3d at 1271. Office Depot has a bona fide interest in protecting its goodwill, customer lists, and proprietary information. It has a bona fide interest in protecting the very things for which it contracted with Babb upon signing the covenant not to compete. If Babb were permitted to violate the non-solicitation restrictions in the Agreement and solicit or hire Office Depot clients or employees, Office Depot will suffer irreparable harm via reduction of revenue and loss of investment in its employees and client goodwill. In short, the balance of the harms weighs heavily in Office Depot's favor and an injunction should be issued under the present circumstances.

The Court finds Babb's response to this factor unpersuasive. First, she devotes a substantial portion of her argument addressing what she insists is Office Depot's failure to meet the *other* factors. When she actually addresses this factor, her argument falls short. The harm to her, in her own words, is that she would be left "without a job." Babb. Decl. ¶ 3. This is unpersuasive to the Court for several reasons. The legislature has expressly instructed courts not to consider this. "In determining the enforceability of a restrictive covenant, a court [s]hall *not* consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought." Fla. Stat. § 542.355(1)(g)1. (emphasis added). Further, this is a contract Babb voluntarily

8

entered into with Office Depot. There are no allegations of coercion, duress, or otherwise. Babb freely accepted the terms of the covenant.

Babb, in arguing for a favorable ruling, essentially asks this Court either to rewrite the terms of her contract with Office Depot, or to discern an intent from the legislature that was expressly rejected. This Court declines to accept either offer.

### 4. Preliminary Injunction and the Public Interest

When freely bargained for, agreed to, and executed, covenants not to compete are in the public interest and necessary to encourage business expansion and growth. *Concept, Inc. v. Thermotemp, Inc.,* 553 So. 2d 1325, 1328 (Fla. 2d DCA 1989). The Court finds Office Depot's request for a preliminary injunction would preserve the status quo and serve the public interest, as expressed by the Florida Legislature, in protecting businesses and commerce. *See Escudero v. Hasbun,* 689 So. 2d 1144, 1146 (Fla. 3d DCA 1997); *see also* Fla. Stat. §§ 542.33, .335.

### 5. Office Depot's Security

A party moving for a preliminary injunction must "give security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).[1] "[T]he purpose of the bond is to compensate the costs and damages sustained by any party found to be wrongfully restrained by the temporary restraining order or preliminary injunction." *HPC US FUND 1, L.P. v. Wood*, 2014 WL 12496559, at *2 (S.D. Fla. May 9, 2014); *Montville*

---

[1] The Court notes the federal rules use the term "security," whereas the Florida rules use the term "bond." Notwithstanding the different term, there seems to be no meaningful difference. Indeed, as evidenced by the case law cited to from this district, the federal courts inconsistently use both terms.

9

*v. Mobile Med. Indus., Inc.*, 855 So. 2d 212, 215 (Fla. 4th DCA 2003) ("The purpose of the bond required as a condition to issuance of a temporary injunction is to provide a sufficient fund to cover the adverse party's costs and damages if the injunction is wrongfully issued.").

Office Depot asks the Court to set bond at $5,000. It bases this calculation on the logic that "Babb would *only* be entitled to a reasonable amount associated with defending against the temporary injunction" if she were subsequently to prove that the injunction was erroneously granted. The Court rejects this tautological argument. The very purpose of the security is to compensate Babb for "costs *and damages*" should she prevail at trial. Unfortunately, Babb's response provides the Court no argument in opposition to Office Depot's $5,000 bond request. Thus, left on its own to determine, at this stage, considering Babb's status as upper-level management and taking into consideration a proration of half a year's salary, and attorneys' fees in defense of this action, the Court finds requiring Office Depot to post security of $85,000 reasonable.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Office Depot's Motion for a Temporary Injunction (DE [9]) is **GRANTED**.

2. Office Depot's Motion for Expedited Discovery (DE [8]) is **DENIED**.

3. Babb, and any individual or entity assisting or acting in concert or participation with her, is enjoined from working for a competitor of Office Depot as defined in the Associate Non-Competition, Confidential and Non-Solicitation Agreement, including, but not limited to, W.B. Mason Co, Inc. ("W.B. Mason"), for a period of six-months as set forth in the Agreement, which shall be tolled until the date that Babb comes into compliance with the non-competition restriction of the agreement.

4. Babb, and any individual or entity assisting or acting in concert or participation with her, shall not directly or indirectly induce or solicit or attempt to influence any current Office Depot employee to leave Office Depot.

5. Babb, and any individual or entity assisting or acting in concert or participation with her, shall not directly or indirectly induce or solicit or attempt to influence any current Office Depot customer(s) with whom Babb had contact or about whom Babb had confidential information to cease doing business with Office Depot or to obtain goods or services from a competitor instead of Office Depot.

6. Babb, and any individual or entity assisting or acting in concert or participation with her, shall not use, permit to be used, disclose, or transmit for any purpose any of Office Depot's confidential or proprietary work product or business information, including but not limited to Office Depot's marketing strategies, information concerning Office Depot's proprietary technologies, techniques, and developments, the names, addresses, and specific information about Office Depot's customers, pricing, rebates, sales data, design information, profit margins, research, and business development strategy.

7. Babb, and any individual or entity assisting or acting in concert or participation with her, is ordered to return immediately to Office Depot all originals, copies, and other reproductions, in any form whatsoever, of any and all documents and information of Office Depot, including but not limited to files accessed, copied, downloaded, opened or otherwise modified by Babb contained on an external storage device.

8. Office Depot shall post security in the amount of $85,000 to pay the costs and damages sustained by Babb should she be found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c).

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 19th day of March 2020.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies to counsel via CM/ECF